**NEXT GENERATION, INC.**

v.

**WAL–MART, INC., d/b/a Sam's Wholesale Club.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 21, 2000.

Opinion Denying Rehearing Feb. 5, 2001.

Permission to Appeal Denied by Supreme Court June 11, 2001.

William L. Brown and James T. Williams, Chattanooga, TN, for appellant, Next Generation, Inc.

Thomas Pinckney, Andy Rowlett, and Keith Quinn, Nashville, TN, for appellee, Wal–Mart Stores, Inc., d/b/a Sam's Wholesale Club.

## OPINION

FRANKS, J., delivered the opinion of the court, in which SUSANO, J., and SWINEY, J., joined.

In this contract dispute, the jury awarded damages to Wal–Mart, Inc., and the Trial Court concurred. Next Generation, Inc., appealed raising issues as to the admissibility of evidence and the Trial

Court's instructions to the jury. We affirm.

In this breach of contract action involving an agreement to purchase 2000 units of a sporting clay machine between Next Generation, Inc., ("Next"), and Wal–Mart, Inc. d/b/a/ Sam's Wholesale Club ("Sam's"), a jury awarded Sam's $1,084,000.00 and Next has appealed. Next raised the following issues:

1. Whether the Trial Court committed error regarding the parol evidence rule?

2. Whether the Trial Court's supplemental instructions following the jury's questions were erroneous?

3. Whether the Trial Court erred in failing to direct a verdict for Next regarding Sam's claim that Next breached an agreement to market the product?

4. Whether the Trial Court erred in failing to direct a verdict for Next regarding Sam's claim that Next breached the implied warranty of merchantability?

5. Whether the Trial Court erred in failing to direct a verdict for Next regarding Sam's claim that Next agreed to reimburse Sam's for units that did not sell?

6. Whether the jury charge of the Trial Court violated the statute of frauds?

7. Whether the Trial Court erred in granting Sam's a directed verdict on Next's claim of promissory fraud and punitive damages?

■ We review judgments based upon a jury verdict and approved by the Trial Judge by determining whether there is any material evidence to support the verdict. Tenn.R.App.P. 13(d). In determining whether there is material evidence to support the verdict, we must take the strongest legitimate view of the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, and allow all reasonable inferences to sustain the verdict, discarding all countervailing evidence. *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698 (Tenn.2000). If the record contains any material evidence to support the jury's verdict, the judgment must be affirmed. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn.1978).

■ The agreement between the parties was entered in Arkansas, but Tennessee and Arkansas have the same version of the parol evidence rule, which basically states that a writing intended by the parties as the final expression of their agreement may not be contradicted by evidence of a prior or contemporaneous oral agreement, but may be explained or supplemented by consistent additional terms. *See* Tenn. Code Ann. § 47–2–202 and Ark.Code Ann. § 4–2–202.

■ Similar to Arkansas, Tennessee law provides that a contract which is unambiguous on its face is considered final and may not be contradicted with parol evidence. *City of Memphis for Use and Benefit of State v. Moore*, 818 S.W.2d 13 (Tenn.Ct.App.1991). Likewise, where the written document contains a clause stating that no other agreements exist other than the ones contained therein, it is final and cannot be varied by parol evidence. *Tidwell v. Morgan Building Systems, Inc.*, 840 S.W.2d 373 (Tenn.Ct.App.1992).

■ In this case, the written documents upon which Next relies are a "commitment" letter written by Dean Sanders, president of Sam's, which states that Sam's will purchase 2000 units from Next before the end of fiscal year 1994, and the vendor agreement signed by Next. It is clear not only from the testimony, but also from the documents, that neither was in-

tended by the parties to be a "final expression of their agreement" as contemplated by the parol evidence rule. The commitment letter, as testified to by Sanders and by Ray Murski, the sales representative for Next, was written to enable Next to obtain financing for production, and was clearly not intended to be a final expression of the agreement, as it is only a one-line document signed by one party. The commitment letter contains no terms regarding payment, form of delivery, dates of delivery, and numerous other essential items.

The vendor agreement was a document that Sam's required its vendors to complete and have on file, but it does not speak to such significant terms as price, quantity, delivery, payment, etc. It is also deficient so far as detailing the actual substance of the parties' deal, and clearly was not intended as the final expression. Both the commitment letter and the vendor agreement are either ambiguous or silent as to many essential terms, and neither contains an integration clause. The evidence establishes that these two documents were not the final expression of the parties agreement.

Since the writings were not final expressions, and the oral terms regarding marketing were not contradictory of the writings, there is no parol evidence issue. There was material evidence regarding the oral terms of the parties' agreement to support the jury's finding that Next had obligations under the contract which were breached, and thus the jury's finding in this regard is supported by material evidence.

■■■ Next argues that the Trial Court's supplemental instructions to the jury following the jury's submission of questions were erroneous, and that Next's proposed instruction should have been given. The Trial Court's instructions basically stated that a contract can be oral or written or both, and that the existence of a contract must be proven by a preponderance of the evidence.[1] This instruction is a correct statement of the law, and is applicable to the facts and issues in the case and is therefore not erroneous. *Ladd by Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83 (Tenn.Ct.App.1996).

■■■ Next requested an instruction which stated that oral terms inconsistent with the written document should not be considered. Since none of the oral terms described by the parties were inconsistent with written documents, the Trial Court correctly refused the instruction.

■■■ Likewise, Next's proposed instruction that any change to the written document would have to be in writing was not appropriate. Written contracts may be supplemented by oral terms when the written document is not a final expression of the agreement, and when the oral terms are not inconsistent. The instruction was not supported by the law or the evidence and was properly denied.

■■■ Next argues that it was entitled to a directed verdict. This issue hinges on the question of whether there was evidence in the record to support the conclusion that Next agreed to undertake responsibilities with regard to the marketing of the product. Dean Sanders and Ray Murski testified unequivocally that LeAnna and Moore for the plaintiff Next had agreed from the beginning to run ads, do demonstrations, go to shows and shoots, etc., in order to create a demand for the product. LeAnna and Moore also testified that they agreed to do these things, but

---

1. The jury had asked if they were to give equal weight to oral and written agreements and whether a written document would supercede an oral agreement?

that their agreement came after the units had been shipped and were not selling. Thus, the evidence is undisputed that the agreement existed, the only dispute regarding the agreement was when the agreement was made and the extent to which they committed themselves. There is also evidence that Next had not fulfilled its agreement with regard to marketing. Murski, as an agent for Next, identified many things which Moore and LeAnna had committed themselves to do that had not been completed. Moore and LeAnna admitted that they had not done all of the things which were described in Murski's communications with Sam's. Sanders also testified that Next had failed in its marketing responsibilities. There was evidence in the record that an agreement to promote existed, and that it had not been satisfied by Next. Accordingly, a directed verdict was inappropriate.

As to the denial of a directed verdict regarding Next's breach of warranty of merchantability, Sam's made the claim in its pleadings, but admits that the issue is now moot because counsel for Sam's did not raise the issue in closing arguments. Next explains that they have preserved the issue out of an abundance of caution, and we conclude there is no need to address the issue.

■■■ Next also complains about the refusal to direct a verdict on the issue of breach of agreement to reimburse. While there is no express agreement in the record that Next agreed to reimburse Sam's for the units picked up, the alleged agreement to reimburse was not the only basis for awarding damages to Sam's. There was ample evidence in the record to establish that Next had promised to undertake certain marketing responsibilities as a part of this agreement, and that Next breached this portion of the contract. Sam's had ordered and paid for nearly 200 units that

it could not sell, and those units were ultimately returned to Next. Sam's expended over a million dollars for these units that did not sell and Next ultimately resold the units after regaining possession. The jury could reasonably conclude Sam's was entitled to a refund of the money paid for those units as compensatory damages, to compensate Sam's for Next's breach. *See Wilson v. Dealy,* 222 Tenn. 196, 434 S.W.2d 835 (1968); *Nashland Associates v. Shumate,* 730 S.W.2d 332 (Tenn.Ct.App. 1987). Moreover, "the amount of damages is primarily a jury question, and a verdict approved by the trial court is entitled to great weight in this court." *Act–O–Lane Gas Service Co. v. Hall,* 35 Tenn.App. 500, 248 S.W.2d 398 (1951).

Next argues that the Trial Court's instructions to the jury were erroneous because (1) they allowed the jury to consider evidence of an alleged oral contract to reimburse in violation of the statute of frauds, and (2) they erroneously stated that the burden of proof for such a contract was a preponderance of the evidence, rather than the clear and convincing standard required under the Arkansas statute of frauds. Next places great emphasis on this alleged oral agreement to reimburse. It was not significant to the outcome of the case. The jury's verdict was supported by material evidence that Next had an obligation to market the product and failed to do so, and the verdict may be upheld on this basis alone. *Benson v. Tennessee Valley Elec. Co-op.,* 868 S.W.2d 630 (Tenn.Ct. App.1993). Error, if any in this regard, was harmless. Tenn.R.App.P. 36(b).

■■■ Next argues that the Trial Court erred in granting Sam's a directed verdict on Next's claims of promissory fraud and punitive damages. We conclude the Trial Court properly directed verdicts on these issues. The Trial Court found that reasonable minds could not differ as

to the lack of fraud, because there was no proof of present intent to willfully injure through false promise, as is required by Arkansas law. Next admits that this is a proper statement of Arkansas law, but argues that Sam's committed to purchase 2000 units when they only intended to purchase 200, and that such constitutes promissory fraud. The testimony from which this can be deduced, however, is that of Ray Murski, who was an agent of Next. Murski testified that Sam's would try 200 units or so and see how they sold, and that if they sold well Sam's would purchase 2000 or more. Sanders testified that he fully intended to purchase 2000 units or more, but that the units did not sell because Next breached its promise to promote the product. Since Murski was agent for Next, his knowledge is imputed to Next and would have been known by Next and could not form a basis for promissory fraud. *See City Nat. Bank of Fort Smith, Ark. v. Vanderboom,* 290 F.Supp. 592 (W.D.Ark.1968).

Likewise, in the absence of fraud, there is no basis for punitive damages, and thus the Trial Court properly directed a verdict on this issue as well. *See Ray Dodge, Inc. v. Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972); *Hodges v. S.C.Toof & Co.,* 833 S.W.2d 896 (Tenn.1992).

■ Finally, Next argues that the Trial Court erred in granting Sam's a directed verdict on its claim for prejudgment interest. Utilizing the proper standard of review, the Trial Court properly granted a directed verdict on this issue. Prejudgment interest is allowed to compensate for damages wrongfully withheld from the time of loss until judgment, and is not allowed where the loss is not "immediately ascertainable with reasonable certainty." *TB of Blytheville, Inc. v. Little Rock Sign & Emblem, Inc.,* 328 Ark. 688, 946 S.W.2d 930 (1997); *Brandt v. Bib Enterprises, Ltd.,* 986 S.W.2d 586 (Tenn.Ct.App.1998).

We conclude that the jury verdict was supported by ample material evidence and we affirm the judgment of the Trial Court and remand with the cost of the appeal assessed to Next Generation, Inc.

## OPINION DENYING PETITION FOR REHEARING

Appellants have filed a Petition for Rehearing, and insist that our Opinion is in conflict with Ark.Code.Ann. § 4–2–202 (Arkansas' parol evidence rule), because they interpret that statute as providing that a written document/agreement can be integrated/final with respect to only the terms contained therein, but yet not be a complete integration or a final expression of the parties' "whole" agreement. Appellants cite no authority for this position.

The Arkansas Supreme Court has explained Arkansas' parol evidence rule as follows:

> No rule of law appears to be better settled than that where a written contract is plain, unambiguous and **complete in its terms**, parol evidence may not be permitted to contradict, vary or add to any of its provisions. In *Cox v. Smith,* 99 Ark. 218, 138 S.W. 978, 980, this court used this language: ' * * * the cause of action herein sued on is founded upon an instrument which is a written contract, * * *. The rule of law that is applicable to all written instruments * * * is that parol testimony is inadmissible to contradict, vary, or add to its terms. * * * where the written contract is **plain, unambiguous, and complete in its terms**, it has been uniformly held by this court that parol evidence is not admissible to contradict or to vary or to add to any of the terms of a written contract. (Citing many cases) Where the written contract is **complete**

in its terms, it is incompetent to engraft thereon any condition by parol testimony. * * * Antecedent propositions, correspondence, prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations when it is **free of ambiguity and complete.** * * * When a written instrument contains such terms as import a **complete obligation**, which is definite and unambiguous, it is conclusively presumed that the **whole agreement** of the parties, and the extent and manner of their undertaking, were reduced to writing. In such cases, the instrument is in the nature of a contract, and cannot be varied or contradicted by parol evidence in the absence of fraud or mistake.'

*Jeter v. Windle,* 229 Ark. 948, 319 S.W.2d 825, 826–827 (Ark.1959) (emphasis added).

Thus, the appellants' argument is contra to the weight of the cases which have construed Arkansas parol evidence rule as requiring a complete, whole, and unambiguous agreement to be contained in the writing for the writing to be considered a final expression. If the written document is not complete in all of its terms and does not embody the whole agreement, it is simply not a final expression pursuant to the statute and case law.

In this case, it is clear that neither the commitment letter nor the vendor agreement was intended to be a final expression of the parties' whole agreement, because neither is complete in its terms, and neither would be considered unambiguous standing alone. Moreover, the parties testified that these writings did not contain their whole agreement, and there is no support in the record for the appellants' argument that these written documents were final expressions as required by the statute and the case law.

We note that the evidence (regarding an alleged agreement to only purchase 200 units) which appellants now object to the jury having heard was introduced by appellants. The testimony of Ray Murski was taken by deposition and was read to the jury by appellants.

Appellants also argue that Murski and Sharon Kidd testified that any agreements regarding marketing should have been contained in the vendor agreement, but appellants seriously mischaracterize this proof. There was dispute about this point from the other witnesses, and a review of the vendor agreement does not support this position. Appellants further argue that because the vendor agreement provided that any changes thereto had to be in writing, this somehow made their proposed instruction which stated that any change to any written document would have to be in writing valid and proper. The proffered instruction did not just pertain to the vendor agreement, but rather to all written contracts, and was simply too broad. Further, the oral terms regarding marketing which the parties testified to were not inconsistent with and did not change anything in the vendor agreement, because the vendor agreement did not address marketing responsibilities.

The court's supplemental jury instruction answered the questions posed in a proper and legally correct manner, and apparently dispelled any confusion the jurors may have had. For the foregoing reasons, we deny the appellants' Petition for Rehearing.